A91A0848. THE STATE v. LAMB.
(413 SE2d 511)

BEASLEY, Judge.

The State appeals an order granting defendant's motion to suppress.

At a suppression hearing the trial court is the trier of fact, *State v. Watts,* 154 Ga. App. 789, 790 (4) (270 SE2d 52) (1980), and on appeal its decision on factual issues and credibility must be accepted unless clearly erroneous. *Muff v. State,* 254 Ga. 45, 48 (2b) (326 SE2d 454) (1985); *Hill v. State,* 183 Ga. App. 654, 656 (2) (360 SE2d 4) (1987).

Applying these principles, the evidence shows that on November 15, 1989, Officer Dorner was informed that Detective George planned to make an undercover drug transaction with a suspect driving a blue Camaro. While on patrol Dorner observed defendant's car, a blue Firebird, exiting Riverdale Plaza. Dorner then observed defendant's car traveling north on Highway 85 at a speed between 37 and 38 mph

and weaving within his lane. The posted speed limit on that part of the highway is 45 mph. Dorner stopped defendant because he "thought [defendant] might be under the influence of alcohol."

After investigating further, Dorner concluded defendant was not intoxicated but requested his driver's license and proof of insurance. When defendant could not produce proof of insurance, OCGA § 33-34-12 (a) (1),[1] Dorner arrested defendant for this failure and impounded defendant's car.

The inventory search of the vehicle produced a .38 caliber pistol and a bottle of pills marked Valium, so the officer also charged defendant with carrying a concealed weapon. He transported defendant to the police station, where a subsequent search of defendant produced bags of suspected cocaine and cocaine paraphernalia.

The superior court concluded that Dorner acted reasonably regarding the initial stop of defendant's car, despite Dorner's admission that he was consciously attempting to stop defendant based on the information Detective George provided. We render no ruling in this regard. The court further concluded, however, that Dorner acted improperly in arresting defendant and impounding his car "solely on the grounds of having no proof of insurance"; that Dorner failed to determine whether the vehicle was actually uninsured and whether the vehicle could safely remain in its present location, relying on Attorney General Opinion 83-5 and OCGA § 33-34-12 (a) (3).

The State contends the trial court erred by ruling that Dorner lacked the authority to impound defendant's vehicle for operating a motor vehicle without proof of insurance.

1. OCGA § 33-34-12 (a) (3) requires: "If the owner or operator of a motor vehicle fails to show proof or evidence of minimum insurance, the arresting officer shall issue a uniform traffic citation for operating a motor vehicle without proof of insurance and shall take possession of the driver's license and forward it to a court of competent jurisdiction."

The statute mandates the procedure and precludes the discretion to effect a custodial arrest in lieu of a citation. The violator faces at most a $25 fine, OCGA § 33-34-12 (a) (4). The officer is authorized only to issue a citation, take the driver's license to assure appearance, and issue a receipt to be used as a temporary license until the court date. Although not expressly mentioned in the statute, cf. OCGA § 17-6-11 (a), this latter step is a necessary corollary to taking the license so as not to summarily impose the penalty of a temporary suspension. Compare *United States v. Wilson*, 853 F2d 869 (11th Cir.

---

[1] OCGA § 33-34-12 was repealed effective January 1, 1991, and OCGA § 40-6-10 was substituted.

1988).

Under OCGA § 40-6-206 (d), law enforcement officers may impound vehicles when a person is charged with violating OCGA § 33-34-12 (a) or (b) if the person admits there is no insurance or if the officer "verifies that the proof of insurance . . . is fraudulent." Neither of these conditions was present, so Dorner lacked authority to impound the vehicle under OCGA § 40-6-206 (d).

Nor is there evidence that any other circumstance existed to authorize movement of the vehicle under the strictures of OCGA § 40-6-206. See also *Mitchell v. State*, 178 Ga. App. 244, 246 (3) (342 SE2d 738) (1986), and cases cited. Compare *Baker v. State*, 202 Ga. App. 73 (413 SE2d 251) (1991).

We find no error in the trial court's grant of defendant's motion to suppress.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur specially.*

CARLEY, Presiding Judge, concurring specially.

I agree with the majority's affirmance of the trial court's grant of the motion to suppress in the instant case. However, I must concur specially so as to explicate what I perceive to be the crucial distinction between the instant case and the whole-court decision in *Baker v. State*, 202 Ga. App. 73 (413 SE2d 251) (1991).

Title 17, Chapter 4, Article 2 of the OCGA addresses the authority of a law enforcement officer to make an initial *arrest*. OCGA § 17-4-23 authorizes, but does not require, an officer to effectuate a *non-custodial* arrest for certain traffic offenses through issuance of a traffic citation. A *custodial* arrest for those traffic offenses can, in the officer's discretion, nevertheless be effectuated pursuant to OCGA § 17-4-20. *Brock v. State*, 196 Ga. App. 605, 606 (1) (396 SE2d 785) (1990). A *custodial* arrest necessarily mandates that the arrestee is to be taken into *custody* by the arresting officer.

Title 17, Chapter 6, Article 1 of the OCGA does not address the authority of an officer to make an initial arrest, but the entirely distinct issue of the arrestee's subsequent *bail and recognizance*. OCGA § 17-6-1 provides generally for a judicial determination of bail and recognizance. However, OCGA § 17-6-11 specifically provides that one who has been subjected to a *non-custodial arrest* for certain traffic offenses through the officer's discretionary issuance of a citation is not to be held in custody pending a judicial determination of bail and recognizance, but may simply deposit his driver's license with the arresting officer. A grant of authority to make a *non-custodial arrest* would be pointless if the officer, having determined to make such a discretionary non-custodial arrest pursuant to OCGA § 17-4-23, was nevertheless required to bring the arrestee into custody for a *judicial*

determination of bail and recognizance pursuant to OCGA § 17-6-1. This anomaly is obviated by the authorization in OCGA § 17-6-11 of a *non-judicial* determination of bail and recognizance when the officer has determined to effectuate a discretionary *non-custodial arrest* for certain traffic offenses pursuant to OCGA § 17-4-23. In the case of such a discretionary *non-custodial arrest,* the officer simply accepts the arrestee's driver's license in lieu of a judicial determination of bail and recognizance and then allows the arrestee to drive away.

It would, however, be highly anomalous to hold that an officer, having determined to make a discretionary *custodial* arrest pursuant to OCGA § 17-4-20 (a), would nevertheless be required to accept the arrestee's driver's license in lieu of a judicial determination of bail and recognizance. To allow the arrestee simply to drive away would be antithetical to the concept of a *custodial* arrest. This would, in effect, mean that the officer has *no* discretion to make a *custodial* arrest of a traffic offender pursuant to OCGA § 17-4-20 (a) and that the traffic offender has an absolute right to be subjected to only a *non-custodial* arrest pursuant to OCGA § 17-4-23. This is clearly *not* the law of this state. It is the officer, not the arrestee, who makes the determination as to whether the arrest will be custodial or non-custodial. "The language of OCGA § 17-4-23 (a) that an officer 'may arrest' for a traffic violation by means of a citation clearly is discretionary. For the convenience of the motoring public and the police, the Code section gives the officer the option of issuing a citation rather than going through the time-consuming ordeal of a custodial arrest. It does not mandate a citation." *Brock v. State,* supra at 606 (1). Accordingly, a discretionary *custodial* arrest necessarily mandates the "time-consuming ordeal" of taking the arrestee into custody for a *judicial* determination of bail and recognizance, whereas that "time-consuming ordeal" is necessarily obviated *only* in the event that the officer has determined to effectuate a discretionary *non-custodial* arrest by means of a traffic citation.

The defendant in *Baker v. State,* supra, had been subjected to a valid *custodial* arrest for a traffic offense pursuant to OCGA § 17-4-20, and we rejected the contentions that, under OCGA §§ 17-4-23 and 17-6-11, a defendant had an absolute right to be subjected to only a *non-custodial* arrest. Since Baker's custodial arrest was lawful, she was properly taken into custody for a judicial determination of her bail and recognizance. Accordingly, an inventory search of her bag pursuant to her lawful custodial arrest was valid and her motion to suppress was properly denied.

Unlike the defendant in *Baker,* appellee in the instant case was *not* subjected to a valid custodial arrest pursuant to OCGA § 17-4-20. He was subjected to an *invalid* custodial arrest pursuant to former OCGA § 33-34-12 (1) (3). That former statute, unlike OCGA § 17-4-

23, did not give the officer any discretion to effectuate a custodial arrest, but specifically mandated a non-custodial arrest for the specific traffic offense which appellant was charged with having committed. Since appellee's custodial arrest was unlawful, he was illegally taken into custody for a judicial determination of his bail and recognizance. Accordingly, the inventory search of his automobile and person pursuant to his unlawful custodial arrest was invalid and his motion to suppress was properly granted.

I am authorized to state that Judge Arnold Shulman joins in this special concurrence.

DECIDED NOVEMBER 26, 1991.

Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney, for appellant.

T. Michael Martin, for appellee.