## A99A1952. CHINNIS v. THE STATE.
(523 SE2d 924)

JOHNSON, Chief Judge.

A police officer does not have an objective basis for suspecting that a person is engaged in a crime merely because the person is a white man driving in an African-American neighborhood late at night, and he picks up an African-American man at a high-crime location, and he then drives slowly in the neighborhood.[1] Early one morning, a police officer saw Godfrey Chinnis and Henry Asbury, both of whom are white, sitting in a parked truck in a high-crime area of an African-American neighborhood, while an African-American man leaned into a window of the truck. The officer stopped Chinnis and Asbury as they drove away from the area because he was suspicious of the two white men being in an African-American neighborhood. During the stop he found cocaine in the truck. Was the stop of the truck lawful? We hold that it was not lawful because the officer did not have an objective basis for suspecting that Chinnis and Asbury were engaged in a crime merely because they were white men in an African-American neighborhood. And because the trial court erroneously denied Chinnis' motion to suppress the cocaine found during the illegal stop, we must reverse his conviction for possessing that cocaine.

At 2:00 on an April morning in 1997, Police Officer Billy J. Ward was on patrol in Hampton. As he drove on Daniel Street in a residential area south of downtown, he saw a red Chevrolet pickup truck parked on the opposite side of the road. Two white men were sitting inside the truck, and an African-American man was standing outside it, leaning into the passenger's window. When the police car approached, the African-American man stepped away from the truck and walked toward an apartment building. Ward drove past the truck, but planned to turn around and come back because he thought it was unusual for white people to be in that area. He called a police sergeant on his car radio to come back him up, and then circled the block.

On his way back to Daniel Street, Ward saw the truck drive past him, heading out of the city. Ward decided to stop the truck, so he turned on his police car's blue lights and followed the truck until it pulled over to the side of the road. Ward ordered the driver to get out of the truck. The driver obeyed and identified himself as Chinnis. Sergeant Choya Barber then arrived at the scene and stayed with Chinnis at the back of the truck while Ward went to identify the passenger still sitting inside the truck. When he looked into the truck,

---

[1] *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998).

Ward saw a piece of suspected crack cocaine inside a plastic bag on the front seat. Ward seized the suspected drug and arrested both Chinnis and the passenger, identified as Asbury.

Chinnis and Asbury were charged by accusation with possessing cocaine. They filed separate motions to suppress the cocaine found in the truck. The trial court denied the motions. Chinnis was then tried alone before a jury. During the trial the judge found Chinnis to be in contempt of court, and the jury ultimately found him guilty of possessing cocaine. Chinnis appeals, challenging, among other things, the denial of his motion to suppress and the contempt ruling.

1. A police officer may conduct an investigatory stop of a person in a vehicle if he has a particularized and objective basis for suspecting the person of criminal activity.[2] The Supreme Court of Georgia has expressly held:

> [T]here is no objective manifestation that a person is, or is about to be, engaged in criminal activity merely because the person is a white man in a black neighborhood late at night, who picks up a black man at a location police consider a high-crime area, and who then drives slowly in a circular fashion through the neighborhood.[3]

The evidence in the present case, construed in favor of the trial court's denial of the motion to suppress, shows at most that Chinnis and Asbury were parked in what the officer described as a high-crime area of an African-American neighborhood; that an African-American man was leaning into the truck; and that when the officer arrived in the area, the man walked away from the truck. Officer Ward conceded at the motion to suppress hearing that he did not actually see a drug transaction take place. And when asked why he stopped the vehicle, Ward testified: "I stopped the vehicle because of the fact that there were two white males in an all-black neighborhood at that time of the morning and plus we have a lot of violence in that neighborhood because of that."

Officer Ward did not have an objective basis for believing that Chinnis was engaged in criminal activity simply because he is a white man who was stopped with another white man in an African-American neighborhood early one morning and was talking to an African-American man who left when the officer arrived.[4] Because

---

[2] *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

[3] *Hughes v. State*, supra.

[4] See *State v. Robinson*, 239 Ga. App. 349 (521 SE2d 377) (1999), in which this court found that an officer had no reasonable, articulable suspicion of criminal activity where he saw that the defendant was parked in a high-crime area and was talking to a man on a bicycle who fled when police tried to search him.

the officer lacked an objective basis for the stop, the trial court erred in denying Chinnis' motion to suppress the cocaine found during the improper stop. Chinnis' conviction for possessing the illegally seized cocaine must therefore be reversed.

2. Contrary to the dissent's position, the record contains no evidence to support a finding that Officer Ward was authorized to stop Chinnis for violating OCGA § 40-6-202, which provides:

> Outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

Ward testified at the motion to suppress hearing and at trial that Chinnis had stopped his truck on the edge of the road. There is no testimony from Ward or any other witness that it was practicable for Chinnis to park off the road instead of on the edge of the road, nor is there testimony that the parked truck obstructed the opposite lane. On the contrary, Ward testified that he was able to drive in the opposite direction past the truck. Furthermore, Ward did not claim that Chinnis was parked illegally or that he stopped Chinnis for having been illegally parked. And the record contains no such parking citation. Moreover, the trial court, as a basis for its denial of Chinnis' motion to suppress, made no finding that Chinnis had violated OCGA § 40-6-202. Based on the record before us, there is no evidence to support a conclusion that Officer Ward lawfully stopped Chinnis because he had been parked in violation of OCGA § 40-6-202.

3. Chinnis' challenge to the sufficiency of the evidence supporting the court's contempt finding is without merit. Criminal contempt of court means disregard for or disobedience of the order or command of the court.[5] Here, Chinnis disobeyed repeated court orders to stop causing disruptions by audibly yawning, gesturing and talking during the proceedings. Given Chinnis' misbehavior in the court's presence and his disregard of the judge's commands, the trial court did not abuse its discretion in finding beyond a reasonable doubt that Chinnis was in contempt of court.[6]

---

[5] *Barlow v. State*, 237 Ga. App. 152, 157 (4) (513 SE2d 273) (1999).

[6] See OCGA § 15-1-4 (a) (1); *Carter v. State*, 231 Ga. App. 42, 45-46 (497 SE2d 812) (1998).

4. Because of our holding in Division 1, we need not address Chinnis' remaining challenges to the evidence sufficiency and jury instructions.

*Judgment of contempt order affirmed. Judgment of conviction reversed. Pope, P. J., Andrews, P. J., Smith, Miller and Phipps, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

The existence of an improper or even illegitimate motive on the part of an arresting officer does not necessarily render a forcible stop unreasonable. The validity of a stop depends not on the officer's subjective state of mind but rather on an objective assessment of the totality of the circumstances. *Montoya v. State*, 232 Ga. App. 24, 25 (2) (a) (499 SE2d 680); *Larochelle v. State*, 219 Ga. App. 792, 796 (4) (466 SE2d 672). Thus, I would disregard Officer Ward's admirable candor about stopping white males at 2:00 a.m. in this known drug area where Ward had made previous drug arrests and focus on whether the objective facts authorize this traffic stop for another reason. The Supreme Court of the United States has held that a traffic stop based upon an observed traffic violation does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances, because "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SC 1769, 135 LE2d 89). An objective assessment of the totality of the circumstances in this case demands appellate approval of the trial court's ultimate decision denying defendant Chinnis' motion to suppress, based upon the violation of OCGA § 40-6-202 committed in the presence of the officer. This traffic violation authorized a custodial arrest of the driver, Chinnis, under the express holding of *Ridgeway v. State*, 205 Ga. App. 218, 219 (422 SE2d 4), authored by then-Presiding Judge Carley. On appeal, this Court is duty-bound to construe the evidence to uphold the trial court's findings *and judgment. Tate v. State*, 264 Ga. 53, 57 (440 SE2d 646); *In the Interest of J. L. G.*, 209 Ga. App. 565, 566 (434 SE2d 126) (whole court), citing *Orkin v. State*, 236 Ga. 176, 189 (3) (223 SE2d 61). Because the majority fails to do this and instead strays from the relevant appellate inquiry to improperly rule on an issue that does not control, and because the majority does not convincingly distinguish controlling precedent, I respectfully dissent from the judgment of reversal.

DECIDED OCTOBER 22, 1999.

*Lloyd J. Matthews*, for appellant.

*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney*, for appellee.